IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GABRIEL PAUL MASCIOLI,**

      Petitioner,

v.                                            **Civil Action No. 1:07cv44**
                                              **Criminal Action No. 1:05cr67**
                                              **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

      Respondent.

**AMENDED OPINION/REPORT AND RECOMMENDATION**

## I. Facts

**A. Factual History**

On July 7, 2005, the petitioner was charged with conspiracy to knowingly and intentionally possess with intent to distribute and to distribute methylenedioxy-methamphine, also known as ecstasy, in violation of Title 21 U.S.C. § 846 and 841(b)(1)(C). On September 13, 2005 petitioner was found guilty and was sentenced to 78 months imprisonment, a $100.00 special assessment and three years supervised release.

**B. Procedural History**

On March 29, 2007, the petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence. The respondent filed a response on May 30, 2007. The petitioner filed a response to the respondent's motion on July 5, 2007. This case is currently before the undersigned based on LR PL P 83.01, et seq., and Standing Order No. 4.

**C. Federal Habeas Corpus**

(1) The government suborned perjury

(2) The government withheld evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963)

(3) Ineffective assistance of counsel because

 (A) The government interfered with petitioner's counsel

 (B) Counsel failed to object to certain jury instructions

 (C) Counsel failed to perform a pretrial investigation of the credibility of Mr. Atkins.

## II. Analysis

**(1) The government suborned perjury**

In this ground, the petitioner argues that there was an undisclosed agreement or understanding between Mr. Atkins, who testified against the petitioner at trial, and the government. According to the petitioner, this agreement entailed that Mr. Atkins testify against the petitioner and in exchange the government would file a motion for a sentence reduction pursuant to F.R.Cr.P. 35(b). This motion would include the government arguing for no incarceration. The petitioner further argues that this agreement was in stark contrast to what was testified to at petitioner's trial. Specifically, the petitioner states that "Mr. Atkins testified that he was the beneficiary of a 5K1.1 sentence reduction covering all cooperation including the cooperation against Mr. Mascioli. [Tr. 114]. This was materially false and misleading because Atkins knew that he was testifying in exchange for a 35(b) motion." [CR DE 80] at 10.

The standard for a petitioner to win on a perjured testimony claim requires one to show "(1) the testimony was false, see Boyd v. French, 147 F.3d 319, 329-30 (4th Cir. 1998); (2) the Government knew the testimony was false, see Thompson v. Garrison, 516 F.2d 986, 988 (4th Cir. 1975); and (3) there is a reasonable probability that the false testimony could have affected the

verdict, Boyd, 147 F.3d at 330." United States v. Roane, 378 F.3d 382 (4th Cir. 2004).

In this case, the petitioner has failed to establish that there was a reasonable probability that the alleged false testimony affected the verdict. At the time of his testimony, Mr. Atkins had been sentenced and had received the benefit of a 5K1.1 reduction. That aspect of his testimony was therefore accurate. The petitioner takes issue with Mr. Atkins omission of the possibility that he could also receive a Rule 35(b) reduction and the government's failure to raise that issue. However, even if the possibility of a further reduction in Mr. Atkins' sentence under Rule 35(b) should have been mentioned, the petitioner has failed to establish that the omission of such testimony could have affected the verdict.

The government's other witnesses, Senior Special Agent Richard P. Nicoloff and Benjamin Boswell, testified as to the petitioner's part in the underlying offense. That testimony was consistent with the testimony of Mr. Atkins. Therefore, even if the jury would have heard evidence that Mr. Atkins could possibly receive a further reduction in his sentence, so as not to serve any actual prison time, his testimony as to the petitioner's part in the alleged crime was confirmed by other witnesses. Thus, knowing about the possibility of a further reduction in his sentence would have done little to discredit the testimony of Mr. Atkins as it related to the petitioner's guilt beyond that which was available under cross-examination of him as to his 5K1.1 deal. As such, the petitioner cannot establish that the failure of Mr. Atkins, or the government, to mention a possible Rule 35(b) agreement affected the verdict and this ground is without merit.

**(2) The government withheld evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)**

The petitioner argues that withholding evidence, specifically impeachment evidence that could be used against Mr. Atkins was a Brady violation. The petitioner states that during the

3

government's closing, they referred to the fact that Mr. Atkins had already been sentenced to twenty four months. This statement, argues the petitioner, was proffered for the sole purpose of showing that there was no reason for Mr. Atkins to lie when, in fact, his testimony could keep him out of jail if he also received the benefit of a Rule 35 reduction. According to the petitioner this was a good reason to lie and should have been disclosed to the petitioner. Furthermore, petitioner argues that this information would have changed the outcome of his Rule 33 motion[1] had it been known.

When analyzing *Brady* violations one must always keep in mind that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). "[T]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976). "Materiality under Brady means that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Fullwood v. Lee, 290 F.3d 663, 687 (4th Cir. 2002) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

Without directly addressing the merits of whether or not there was an undisclosed agreement or understanding, the petitioner does not show that the agreement or understanding, had it been known or available to him, would have changed the outcome of any of his proceedings. Instead, petitioner seeks to have the Court speculate twice: first as to whether there even was an alleged undisclosed agreement and second would its disclosure have affected the outcome of the trial. Even

---

[1] A Rule 33 motion is a motion for a new trial. It is only granted if the "interest of justice so requires."

assuming that this evidence would have completely discredited Mr. Atkins, there were still two other witness, Benjamin Boswell and Senior Special Agent Richard P. Nicoloff, that connected the petitioner to the underlying offense. Furthermore, Mr. Atkins testified that he received a deal in exchange for his testimony; testimony the jury heard and could consider in judging the credibility of Mr. Atkins testimony. The only difference is that the supposed undisclosed agreement enhanced the deal testified to at trial[2]. Therefore, whether the alleged undisclosed agreement would have had an effect on the proceedings is doubtful. There is no evidence in the record that the undisclosed agreement or understanding was in any way material to actual guilt or innocence of Mascioli.

**(3) Ineffective assistance of counsel**

The Supreme Court has stated that for claims of ineffective assistance of counsel ("IAC") a defendant must show that (1) there was a deficient performance by counsel (2) and that this deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 692 (1984). As the Fourth Circuit has explained, "A defendant asserting an IAC claim must therefore satisfy both prongs, and a failure of proof on either prong ends the matter." <u>United States v. Roane</u>, 378 F.3d 382, 406 (4th Cir. 2004).

The Supreme Court has said that in reviewing the performance of counsel, the Court must "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective...." <u>Strickland</u>, 466 U.S. at 689. Because this is such a difficult evaluation, the court must "indulge a strong presumption" that counsel's conduct, trial strategy, and tactics are within "the wide range of reasonable professional assistance." <u>Id</u>. at 689. Further, "the standard of reasonableness is

---

[2]As to the Rule 33 motion, having this information would not have changed the ruling because this evidence is merely impeaching evidence. It follows that this does not meet the five-part test of a F.R.Cr.P. 33 motion.

highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

In order to satisfy the general prejudicial effects requirement, the defendant must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

**(A) The government interfered with petitioner's counsel**

The petitioner argues that the government, by suborning perjury and not turning over evidence of a undisclosed agreement or understanding prevented the petitioner from receiving effective assistance of counsel. The petitioner states that "a defendant may be deprived of the right to effective assistance of counsel if the government 'interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense.'" [CR DE 80] at 7 (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984))[3]. However, even with all of the facts provided by petitioner being taken as true, there is no indication in the record or pleadings that shows that the government interfered with his trial counsel's ability to make independent decisions about how to conduct the defense.

Assuming that there was an undisclosed agreement or understanding, petitioner's trial counsel still had the ability to question Mr. Atkins about his incentive to lie and his motivation to testify. What petitioner fails to recognize is that the motivation to testify or lie is the same and the cross examination is the same whether the witness was given a 5K1.1 motion for substantial assistance

---

[3]The petitioner further states, without citing, that "[w]here the defendant establishes government interference with the right to effective assistance of counsel, the defendant is not required to prove prejudice to obtain reversal." [Civ DE 80] at 7. After an extensive review of the case law, the undersigned finds no law to support this statement for this specific set of facts listed in the pleadings.

downward departure or a later Rule 35 reduction in sentence. In either case the inherent bias is: What are you getting to testify and why shouldn't the jury conclude that you would testify falsely to get the sweetheart deal you have been offered. Furthermore, for the reasons listed above in section (1), there is no indication that the petitioner was prejudiced in any way from the non-disclosure, assuming there was an undisclosed agreement or understanding. Therefore, this claim is without merit and should be dismissed.

### (B) Counsel failed to object to certain jury instructions

In this ground, the petitioner argues that his trial counsel was ineffective for not objecting to two parts of the jury instruction and but for this deficient performance, the outcome of the proceeding would have been different. The petitioner specifically argues that one part of the jury instructions unfairly assumed that the petitioner gave a "statement attributed to him by the Agent despite Mr. Mascioli's testimony to the contrary[4]." [CR DE 80] at 7. Furthermore, petitioner states that the jury charge on conspiracy "understated the government's burden of proof with respect to a conspiracy to possess with intent to distribute and to distribute controlled substances." [CR DE 80] at 7.

In Neder v. United States, 527 U.S. 1 (1999), the Supreme Court held "that the omission [of

---

[4]The instructions read:
> You have heard that the defendant gave an incriminatory statement. Whether this statement was voluntarily given and, if so, what weight to give it is entirely up to you. In other words, these are questions of fact which are up to a jury to decide.
> In determining whether the statement was voluntary and what weight to give it, if any, you should consider what we call "the totality of the circumstances." In making this important determination you may consider, for example, whether the statement was induced by any promise or threat. You may also consider any other factor which your common sense tells you is relevant to the issue of voluntariness.

[CR DE 44] at 13.

an element of an offense or an error in a jury instruction] is subject to harmless error analysis. Under the harmless error standard, habeas relief must be granted if the error had "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice." Id. 507 U.S. at 637. "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

1. Incriminatory Statement

From the transcript it appears Defendant admitted talking to agent Nicoloff at the Pittsburgh Airport. Defendant admits he told agent Nicoloff that he witnessed two individuals make two 100 pill transactions. He denies admitting to agent Nicoloff that he was dealing in or receiving pills. CR DE 56 at p. 52.

The challenged portion of the District Judge's charge when read in isolation suggests that an incriminatory statement was made by Defendant to agent Nicoloff. While it might have been more clear and appropriate to charge the jury to determine if an incriminatory statement was made by the Defendant before calling on the jury to assess whether the evidence established the statement to be voluntarily made or not, the petitioner is not able to show and has not shown actual prejudice by virtue of the Court's actual charge when read in pari materia. When looking at the "context of the overall charge" not just the specific objected to part, Cupp v. Naughten, 414 U.S. 141, 146 (1973), the undersigned finds no prejudice. The Court charged the jury that "Conduct of the Defendant,

8

including his statement knowingly made and acts knowingly done, upon being informed of the crime that has been committed or upon being confronted with criminal charges, may be considered by the jury in light of all the evidence in the case in determining the defendant's guilt or innocence. When a Defendant voluntarily and intentionally offers an explanation and makes some statement tending to show his innocence and this explanation of the statement later is shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of guilt. Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or a statement tending to establish his innocence. Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury. A statement or an act is knowingly made or done if made voluntarily and intentionally and not because of mistake or accident or other innocent reason." This portion of the Court's charge clearly leaves the determination of fact with respect to the statement, its content, the motivation of Defendant in making it all to the jury to decide.

The specific portion of the charge in question is preceded by a statement that "[o]nce a defendant . . . waives his right to remain silent and testif[y] . . . you should judge his testimony in the same manner as you judge the testimony of any other witness." [CR DE 44] at 13. The whole charge was preceded by a section explaining that

> The testimony of a law enforcement agent or other Government official is entitled to no special or exclusive sanctity. A law enforcement agent who takes the witness stand subjects his or her testimony to the same examination and the same tests that any other witness does.

[CR DE 44] at 12.

Therefore, even assuming there was error in this one small portion of the jury charge, it is

9

clear that it had no substantial or injurious effect. Testimony was heard from both sides about the this issue and it was known to the jury that the petitioner, while admitting he made a statement to agent Nicoloff, contested ever making an **incriminatory statement**. Therefore, the undersigned finds this claim to be without merit.

2. Burden of Proof

The petitioner claims that "[t]he specific instructions [objected to[5]] and the instructions as a whole fail to communicate to the jury that a conspiracy requires an interdependence among the conspirators, and a unity of purpose, elements that are missing from this case." [CR DE 71] at 15.

When looking at the jury charge as a whole, it is clear that this claim is without merit. The jury charge states

> A "conspiracy" is an agreement, spoken or unspoken, between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member becomes the agent of every other member. In order to sustain its burden of proof for conspiracy charged in **Count One** of the Indictment, the United States must prove the following **three (3) essential elements** beyond a reasonable doubt:
>
> **First,** that there was an agreement between two or more persons to engage in conduct that violates federal drug law;
>
> **Second,** that the defendant knew of the agreement; and
>
> **Third,** that the defendant knowingly and voluntarily, that is willfully, became part of the agreement.

[CR DE 44] at 19. [emphasis supplied]

This portion of the charge when read as a whole communicates to the jury that an

---

[5]The charge in question reads:
> Upon establishing the existence of the conspiracy, only a slight connection need be made linking the defendant to the conspiracy in order to support a conspiracy conviction.

[CR DE 44] at 20.

interdependence among the conspirators, and a unity of purpose are required. Furthermore, the jury charge is replete with references to common goals, agreements, objectives, and purpose. [CR DE 44] at 18-22. This is consistent with the applicable law at the time the charge was given. Therefore, this claim is without merit and should be denied.

### (C) Counsel failed to preform a pretrial investigation of the credibility of Mr. Atkins

The petitioner argues that if petitioner's trial counsel had conducted a reasonable background investigation into Mr. Atkins past he would have learned of "Robert Bruton, Nicholas Fusco, Rachael Kalabokes, Betheny Roberts. . . ." [CR DE 71] at 14. The petitioner claims that these individuals were "ready, willing and able to give testimony that would have undermined the credibility of A.J. Atkins. . . ." [CR DE 71] at 14. The petitioner goes on to say that these individuals were going to testify that Mr. Atkins "made statements indicating Mr. Mascioli was not involved in their drug conspiracy." [CR DE 71] at 14.

In this instance, the undersigned agrees with the respondent that this claim is similar to Defendant's Motion for a New Trial [CR DE 49]. In the Memorandum in Support of Defendant's Motion for a New Trial petitioner stated,

> [T]o have identified this newly discovered evidence prior to trial would have required direct inquiry of the dozens or hundreds of people known or suspected by [the petitioner] to have knowledge of Atkins and Boswell, in the hope that one or both of them might have made a statement exculpatory of him. Such an undertaking would not have been reasonable, and the level of diligence required would have vastly exceeded mere 'due diligence.'

[CR. DE 61] at 3.

This excerpt from petitioner's motion shows that to find this information from these witnesses would have required extensive investigation that was beyond the wide range of reasonable professional assistance. Petitioner cannot turn around and now argue that not talking with witnesses

11

was deficient performance. Furthermore, the undersigned agrees with the premise set forth in petitioner's Motion for a New Trial. What the petitioner is now claiming in his is §2255 motion is clearly beyond the bounds of professional assistance for counsel. It is clear from the record that this claim is without merit and should be dismissed.

### IV. Recommendation

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be **DENIED and DISMISSED with prejudice** from the Court's active docket.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: July 3, 2008

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE