IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


GABRIEL PAUL MASCIOLI,

      Petitioner,

v.                            CIVIL NO. 1:07CV44
                                CRIMINAL NO. 1:05CR67
                                (Judge Keeley)

UNITED STATES OF AMERICA,

      Respondent.


## ORDER ADOPTING REPORT AND RECOMMENDATION


      The Court referred this habeas corpus petition pursuant to 28 U.S.C. § 2255 filed by Gabriel Paul Mascioli ("Mascioli") to United States Magistrate Judge John S. Kaull on March 29, 2007 for an initial review and report and recommendation ("R&R") pursuant to LR PL P 83.15 and Standing Order No. 5.  In his R&R, and Amended R&R, issued on July 3, 2008, Magistrate Judge Kaull recommended that the Court deny Mascioli's § 2255 petition and dismiss the case with prejudice.  Mascioli filed timely objections on July 14, 2008. Thereafter, on March 26, 2009, Mascioli's attorney sent a letter to this Court, updating it on recent case law development.  Following a de novo review, the Court **ADOPTS** Magistrate Judge Kaull's R&R in its entirety, and **DENIES** and **DISMISSES** Mascioli's § 2255 petition with prejudice.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. Background

On September 13, 2005, a jury sitting in the Northern District of West Virginia convicted Mascioli of conspiracy to possess with intent to distribute, and to distribute, Ecstasy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c), and 846. Mascioli was sentenced to 78 months of imprisonment to be followed by three years of supervised release. On March 27, 2006, he filed a motion for a new trial, which this Court denied on March 30, 2006.

Later, on March 29, 2007, Mascioli filed his petition pursuant to 28 U.S.C. § 2255 in which he claimed that his conviction was obtained in violation of his Fifth and Sixth Amendment rights. Specifically, he argued that the government had suborned perjury at trial and, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), had withheld evidence regarding a "secret" deal between it and a witness named A.J. Atkins ("Atkins"). He also argued that he had been deprived of effective assistance of counsel because (a) the government had "hamstrung" his attorney by withholding evidence of the alleged secret deal, (b) his attorney had failed to object to two parts of the Court's charge to the jury, and (c) his attorney had failed to conduct an adequate pre-trial investigation into Atkins's credibility.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the response it filed on May 30, 2007, the government denied it had suborned perjury or wrongfully withheld evidence in violation of <u>Brady</u>, and asserted that it had no secret deal with Atkins. It further argued that Mascioli had not received ineffective assistance of counsel because (1) the government had not withheld evidence necessary to his defense since there was no secret deal, (2) the jury instructions were proper, and (3) Mascioli's trial counsel had conducted a reasonable investigation into Atkins's credibility.

### II. Magistrate Judge Kaull's R&R

In his R&R, Magistrate Judge Kaull recommended that the Court deny Mascioli's § 2255 petition and dismiss it with prejudice. Specifically, he concluded that no evidence existed of any secret deal for a sentence reduction, and that, even if one did exist, the government's failure to disclose it would not have affected the verdict because the government's suppression of any such deal is immaterial under <u>Brady</u>. In that regard, Magistrate Judge Kaull noted that two other witnesses had corroborated Atkins's testimony. Furthermore, he found that Mascioli had not received ineffective assistance of counsel because (1) the government had not interfered with Mascioli's representation, (2) his counsel had not erred when

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

he failed to object to certain jury instructions, and (3) his counsel had properly investigated Atkins's credibility.

### III. Petitioner's Objections to the R&R

On July 14, 2008, Mascioli filed objections to the R&R, and also sought both an evidentiary hearing and discovery on these issues. He objected to the Magistrate Judge's (1) reliance on other witnesses who had corroborated Atkins's testimony, (2) conclusion that Atkins and the government had no secret deal, and (3) denial of his ineffective assistance of counsel claims. Some months after filing these objections, Mascioli's attorney wrote to a letter advising the Court about a recent Sixth Circuit case concerning deals between witnesses and the government.

### IV. De Novo Review

Pursuant to 28 U.S.C. § 2255(a):

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A petitioner who collaterally attacks his conviction under § 2255 bears the burden of establishing his grounds by a preponderance of

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

A district court reviews objections to a Magistrate Judge's R&R de novo. See 28 U.S.C. § 636(b)(1)(c). "By definition, de novo review entails consideration of an issue as if it had not been decided previously." U.S. v. George, 971 F.2d 1113, 1118 (4th Cir. 1992).

## A.    The Alleged Secret Rule 35(b) Deal

Mascioli makes much of his suspicion that Atkins and the government had made a secret deal that Atkins would testify against Mascoli in exchange for a sentence reduction under Federal Rule of Criminal Procedure 35(b) ("Rule 35(b)").[1] To evaluate this issue, it is necessary to review the background of the criminal proceedings involving Adkins in the Western District of New York.

On October 13, 2004, Atkins pleaded guilty in the Western District of New York to a one-count Information charging him with importing methamphetamine. On June 20, 2005, he was sentenced to 26 months of incarceration and three years of supervised release,

---

[1]    The rule states: "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1).

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

a sentencing departure based on a motion filed by the United States pursuant to United States Sentencing Guideline ("U.S.S.G.") § 5K1.1. The motion for departure was a consequence of Atkins' cooperation with government officials in the Western District of New York.

Before he was scheduled to self-report to FCI-Elkton for incarceration on September 21, 2005, Atkins appeared in this District on September 12, 2005 to testify on behalf of the government during Mascoli's trial. At that time, he testified that he and Mascioli had worked together to sell Ecstasy pills smuggled by Atkins into the United States from Canada. Two other government witnesses, U.S. Customs Special Agent Richard Nicoloff and co-defendant Benjamin Boswell, also testified that Mascioli participated in these drug transactions.

On direct examination, Assistant United States Attorney John Parr questioned Atkins regarding his current sentence and the reduction he had received pursuant to U.S.S.G. § 5K1.1 for his assistance to the United States. In its closing argument, the government referenced Atkins's testimony, stating:

> AJ Atkins told you that he's doing twenty-four months.
> Several minutes of Mr. Pennington's argument was look at
> all the reasons he has to lie. Look at all the reasons
> he and Mr. Boswell have to lie, because they have a
> cooperation agreement. Did we hide anything from you?

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

> Who introduced those plea agreements so you could see
> them and take them back?  It wasn't the defendant; it was
> the United States and what do you see in that plea
> agreement?   What did you hear from the testimony?
> They've already been sentenced.  They're done.  I would
> venture to guess that isn't Mr. Boswell's chosen line of
> clothing that he wanted to wear in here, this orange
> jumpsuit.  He's done.  He's sentenced.  Did you hear any
> question about any motivation, any testimony about any
> motivation that they're going to get anything in this
> case for their testimony?  Nothing.  Nothing.

Trial Trans., 1:05cr67, dkt. no. 57, p. 279.

Following Mascioli's trial, but before his client was
scheduled to self-report to FCI-Elkton, Atkins's attorney in New
York moved for a 30-day stay of execution of his sentence, stating
that she expected the government to file a motion pursuant to Rule
35(b) to further reduce Atkins's sentence based on his assistance
in Mascioli's trial.   Thereafter, on September 21, 2005, an
Assistant United States Attorney in the Western District of New
York in fact filed a Rule 35(b) motion for a further reduction in
Atkins's sentence based on his testimony against Mascioli.

While that motion was pending, due to administrative error
regarding the execution of his sentence, Atkins "fell into the
cracks" of the judicial and prison systems and was not re-
designated to a specific institution after the 30-day stay expired.
In fact, he remained on bond for more than a year while waiting to
be re-sentenced pursuant to the Rule 35(b) motion.  When, on

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

October 25, 2006, he finally appeared for his re-sentencing, Judge Richard Arcara of the United States District Court for the Western District of New York discovered for the first time that Atkins had never been directed to report to prison to begin serving his sentence. Shocked by the oversight, Judge Arcara stated that he had never heard of such a situation but nevertheless granted the government's Rule 35(b) motion and reduced Atkins' sentence to one year of probation.

Mascioli contends that the timing of the government's Rule 35(b) motion and the year-long sentencing delay lead to the "strong" conclusion that the government and Atkins had a deal that should have been, but never was, disclosed to the jury.

    1.  *No Evidence of a Secret Deal Exists*

Despite Mascioli's argument, there is no evidence in the record of any secret deal between Atkins and the government.  The timing of the filing of the government's Rule 35(b) motion, several days after Atkins' appearance at Mascioli's trial, is not suspect; it is not unusual for the government to file such motions shortly after a witness provides incriminating testimony that is helpful to the government. Moreover, the record here clearly establishes that the delay in Atkins's sentencing was due solely to administrative error and was not the result of a motion by the government or any

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

order of the court. Atkins was not re-designated to a Bureau of
Prisons facility when the 30-day stay imposed by the Western
District of New York expired because the United States Marshal
Service there incorrectly believed that his sentence had been
indefinitely stayed pending an appeal. The circumstance of his
remaining on post-sentencing bond, therefore, was an anomaly based
on error, rather than any secret deal. Thus, Mascioli has failed
to show, by a preponderance of the evidence, that Atkins testified
pursuant to some secret arrangement with the government, and his
claims on this issue fail.

The Sixth Circuit case which Mascioli recently drew to the
Court's attention, Harris v. Laffler, 553 F.3d 1028 (6th Cir.
2009), does not aid his argument. In Harris, the Sixth Circuit
found that the prosecution had wrongfully withheld evidence when it
failed to disclose that the police had made a secret pre-trial deal
with a witness. Harris, 553 F.3d at 1030. The police told the
government witness that they would release him and his girlfriend
if he testified against the defendant, and then told him not to
tell anyone about their deal. Id. at 1033.

Harris is clearly distinguishable from this case because there
was actual evidence of a secret deal in that case. Id. Here, by
contrast, Mascioli's assertion of a secret deal is mere

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

speculation. Moreover, the government's suppression of the evidence in <u>Harris</u> was prejudicial to the defendant because that witness's testimony was the only eye-witness evidence linking the defendant to the crime. <u>Id.</u> Here, Atkins's testimony was corroborated by at least two other witnesses.

In sum, because there is no actual evidence of a secret agreement between Atkins and the government, Mascioli's objections on this ground are without merit.

>    *2. Even If the Government Did Suborn Perjury, it Was Immaterial*

Had an alleged deal existed, the government's failure to disclose it does not support setting aside Mascioli's conviction. In order to prevail on a claim that the government introduced perjured testimony, the petitioner must prove (1) the testimony was false, (2) the government knew that the testimony was false, and (3) there is a reasonable probability that the false testimony could have affected the verdict. <u>U.S. v. Roane</u>, 378 F.3d 382, 400 (4th Cir. 2004). Here, Mascioli claims that the government suborned perjury because it did not disclose the alleged deal and did not question Atkins about it during his direct examination.

Even had the government known of, but failed to inquire about, the existence of such a deal, it is unlikely this omission would

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

have affected the verdict. First, the jury already knew that Atkins had received a sentence reduction under U.S.S.G. § 5K1.1 for cooperating with the government, because he testified to this fact. Although Mascioli claims that the jurors would have discredited Atkins had they known that he was going to receive a further reduction in exchange for testifying, this claim is speculative at best and insufficient to create a reasonable probability that such knowledge could have affected the jury's decision in the case.

Significantly, other witnesses corroborated Atkins's testimony. Two of these, Senior Special Agent Nicoloff and Atkins's co-defendant, Boswell, testified that Mascioli participated in the drug transactions. Thus, had the jurors discredited Atkins's testimony because of the likelihood that he would receive a Rule 35(b) reduction in exchange for his cooperation, it could rely on the testimony of two other witnesses who testified to the same events and corroborated Adkins's testimony. It is therefore improbable that the jury would have discredited the cumulative testimony of multiple government witnesses based on the disclosure of a further deal for Atkins since they knew Atkins had already received a sentence reduction based on his earlier assistance to the government.

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Inasmuch as the jury already knew that Atkins had received a sentence reduction, and because other witnesses corroborated Atkins's testimony about Mascoli, it is not reasonably probable that the alleged omission affected the verdict.

> 3.  *The Government's Suppression of Impeachment Evidence is Immaterial*

Even if the government had a secret deal with Atkins, Mascioli's claim that such evidence was wrongfully withheld is without merit because the "suppressed" evidence is not material under <u>Brady</u>. "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87. Impeachment and exculpatory evidence both fall under the <u>Brady</u> rule. <u>U.S. v. Bagley</u>, 473 U.S. 667, 676 (1985). The standard for materiality, however, is fairly high because "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "'reasonable' probability is a probability sufficient to undermine confidence in the outcome." <u>Bagley</u>, 473 U.S. at 682.

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

For the reasons already discussed, had the government withheld evidence that Atkins was testifying against Mascioli with the expectation of receiving a further sentence reduction under Rule 35(b), such omission is simply insufficient to undermine confidence in the verdict. The jury knew that Atkins had already received a reduction under U.S.S.G. § 5K1.1 for his cooperation with the government, and had heard from two other government witnesses who gave largely the same testimony as Atkins gave. Thus, it is unlikely such information would have altered the outcome in Mascioli's case; the jury already had ample evidence of Atkins's favorable treatment by the government with which to weigh his credibility and motive for testifying. Therefore, Mascioli's <u>Brady</u> claim is without merit.

### B.    Ineffective Assistance of Counsel Claims

Mascioli alleges three (3) grounds to support his claim that he received ineffective assistance of counsel. First, he claims that the government interfered with his representation by withholding evidence of the secret agreement. Second, he alleges that his attorney did not object to certain jury instructions. Finally, he submits that his attorney failed to properly

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

investigate Atkins's credibility. The Court agrees with Magistrate

Judge Kaull's recommendation and finds these arguments meritless.

The Sixth Amendment right to counsel means that the defendant

has a right to the effective assistance of counsel.  In <u>Strickland</u>

<u>v. Washington</u>,466 U.S. 668, 692 (1984), the United States Supreme

Court articulated a two-part test for analyzing ineffective

assistance of counsel claims.  That test requires a defendant to

show not only that his counsel performed deficiently, but also that

the deficient performance prejudiced him.  <u>Id.</u>  To meet this

burden, a defendant must demonstrate "a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  <u>Id.</u> at 694.

There is, however, a "strong presumption" that a defense

attorney's conduct, trial strategy, and tactics are within "the

wide range of reasonable professional assistance," <u>id.</u> at 689, and

the standard of reasonableness is highly deferential.  <u>Kimmelman v.</u>

<u>Morrison</u>, 477 U.S. 365, 381 (1986).

> 1.  *The Government Did Not Interfere With Mascioli's*
>     *Representation*

The government did not interfere with Mascioli's

representation by withholding impeachment evidence. As discussed,

there is no evidence of a secret Rule 35(b) deal; therefore, the

<u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Government could not and did not violate Mascioli's Sixth Amendment right to disclosure of such information. Moreover, had the government been aware that Atkins hoped to receive a further sentence reduction in exchange for testifying, its failure to inform Mascioli's counsel of that information does not rise to the level of interference necessary to trigger the presumption of ineffective assistance. This conclusion is underscored by the fact that Mascioli's counsel already knew that Atkins had received a § 5K1.1 reduction, and therefore was able to - and in fact did - cross-examine Atkins regarding this possible motivation.

2.  *Jury Instructions Were Proper*

Mascioli also contends that his attorney was ineffective because he failed to object to certain sentences within the Court's charge to the jury. Specifically, Mascioli claims that his attorney should have objected to the instruction that stated, "[y]ou have heard that the defendant gave an incriminatory statement."[2] Mascioli argues that this sentence unfairly assumes he made the incriminating statement. Mascioli also contests the

_____

[2]     The relevant portion of the jury instruction reads: "You have heard that the defendant gave an incriminatory statement. Whether this statement was voluntarily given and, if so, what weight to give it is entirely up to you. In other words, these are questions of fact which are up to the jury to decide."

15

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

instruction that stated, "[u]pon establishing the existence of the conspiracy, only a slight connection need be made linking the defendant to the conspiracy in order to support a conspiracy conviction."[3]  He argues that the instruction understates the government's burden and that his attorney should have requested an instruction on conspiracy with four elements, instead of three.

In the Fourth Circuit, "[a]n erroneous jury charge may form the basis of a habeas petition, either independently or in conjunction with an ineffective assistance of counsel claim, where the instruction 'so infected the entire trial that the resulting conviction violates due process' by rendering the trial fundamentally unfair." Luchenburg v. Smith, 79 F.3d 388, 391 (4th Cir. 1996) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)). When a petitioner contests the jury charge in conjunction with an ineffective assistance of counsel claim, the petitioner still must

---

[3]     The relevant portion of the jury instruction reads: "In order to sustain its burden of proof for the conspiracy charged in Count One of the Indictment, the United States must prove the following three (3) essential elements beyond a reasonable doubt: First, that there was an agreement between two or more persons to engage in conduct that violates federal drug law; Second, that the defendant knew of the agreement; Third, that the defendant knowingly and voluntarily, that is wilfully, became part of the agreement. . . . Upon establishing the existence of a conspiracy, only a slight connection need be made linking the defendant to the conspiracy to support a conspiracy conviction. Again, this connection must be proved beyond a reasonable doubt."

<u>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

satisfy the two-prong test of <u>Strickland</u> and show "(1) that counsel

made errors so serious that counsel's representation fell below an

objective standard of reasonableness, and (2) that such failure

resulted in prejudice so as to render the results of the trial

unreliable." <u>Id.</u> Finally, jury instructions must be reviewed not

as isolated sentences, but as a whole. <u>Waine v. Sacchet</u>, 356 F.3d

510, 517 (4th Cir. 2004).

*a.*

Defense counsel's failure to object to the "incriminatory

statement" language did not cause counsel's representation to fall

below an objective standard of reasonableness.  The contested

sentence simply states: "You have <u>heard</u> that the defendant gave an

incriminatory statement." 1:07cv44, dkt. no. 44, p. 13 (emphasis

added).  Although Mascioli argues that this statement assumes that

he, in fact, did make the incriminating statement, a close reading

of this sentence belies that conclusion.  The instruction merely

recognizes the fact that a witness testified that Mascioli had made

an incriminating statement to him.  Whether the jurors believed the

testimony of the witness was entirely up to them.

Moreover, even if the sentence implied that Mascioli had given

an incriminatory statement, when considered in the context of the

entire jury charge, it is clear that this sentence did not infect

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

the whole trial so as to render it fundamentally unfair. For example, in addition to the sentence challenged by Mascoli, the charge also encouraged the jury to consider whether the alleged incriminating statement was induced by any promise or threat. Furthermore, it emphasized that the jurors are the sole judges of the witnesses' credibility and encouraged them to carefully weigh the testimony of the various witnesses. It also reminded them that the testimony of law enforcement officers is entitled to no special weight or sanctity.

Thus, when considered in the larger context of the entire jury charge, this one sentence did not infect the proceedings so as to render the whole trial fundamentally unfair; Mascioli's attorney, thus, did not act unreasonably in failing to object to it. Therefore, because the conduct of his attorney did not fall below a reasonably objective standard, Mascioli has failed to satisfy the first prong of <u>Strickland</u> and his claim of ineffective assistance regarding the incriminatory statement instruction fails.

*b.*

The second ground of alleged ineffectiveness concerns the jury instruction explaining the government's burden of proof in a drug conspiracy prosecution. In order to prove a drug conspiracy, the government must prove beyond a reasonable doubt that the defendant

had (1) an agreement between two or more persons to engage in conduct that violates a federal drug law, (2) knowledge of the conspiracy, and (3) knowingly and voluntarily participated in the conspiracy. U.S. v. Strickland, 245 F.3d 368, 384-85 (4th Cir. 2001). "Once a conspiracy has been proved, the evidence need only establish a slight connection between any given defendant and the conspiracy to support conviction." Id. at 385.

Mascioli contends that the Court should have explicitly instructed the jury to also find an "interdependence" among the co-conspirators. He relies on several Fourth Circuit cases that include this element in a conspiracy charge. See, e.g., U.S. v. Stewart, 256 F.3d 231, 250 (4th Cir. 2001); U.S. v. Robinson, 264 Fed. Appx. 328, 329 (4th Cir. 2009) (unpublished). While the Fourth Circuit has clearly upheld jury instructions incorporating "interdependence" as a fourth element in a drug conspiracy charge, it has also affirmed jury instructions which do not include "interdependence" as a fourth element. See Strickland, 245 F.3d at 384-85.

Importantly, the concept of "interdependence" was implied in every element of the Court's charge. "Interdependence is established when the activities of alleged co-conspirators in one aspect of the charged scheme are necessary or advantageous to the

19

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

success of the activities of co-conspirators in another aspect of the charged scheme, or the success of the venture as a whole." Stewart, 256 F.3d at 250.

Although several Fourth Circuit opinions have adopted this as a fourth element in finding a drug conspiracy, it is not required and where, as here the concept of interdependence was incorporated into the instructions, any failure to include it as a separate element, if error at all, is harmless. Not only did the instruction require the jurors to find that Mascioli had agreed with two or more persons to engage in illegal conduct, but it also required them to find that he knew of the agreement and that he wilfully participated in it. See Case No. 1:05cr67, dkt. no. 44, p. 19 (emphasis added). Because an interdependence among co-conspirators is required for them to agree to engage in certain conduct, these instructions implicitly incorporate the concept of interdependence.

The jury instructions also contain many other references to the concept of interdependence. For example, they state that "[a] 'conspiracy' is an agreement, spoken or unspoken, between two or more persons to join together to accomplish some unlawful purpose. It is a kind of 'partnership in crime' . . . ," id. (emphasis added). They also state that "the government must prove beyond a

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

reasonable doubt that those who were involved <u>shared a general</u> <u>understanding</u> about the crime," <u>id.</u> at p. 20 (emphasis added). Finally, they require the jury to find that "the defendant knew the essential purpose or goal of the agreement or understanding and knowingly entered into the agreement intending in some way to accomplish the goal or purpose by this <u>common plan or joint</u> <u>action</u>." <u>Id.</u> at p. 21 (emphasis added).

In sum, the Court's jury instructions on conspiracy implicitly convey the concept of interdependence. They are legally sound and Mascioli's counsel did not err in failing to object to them. Because his attorney acted reasonably, Mascioli has not satisfied the first prong of the <u>Strickland</u> test, and his second claim of ineffective assistance of counsel, therefore, fails.

>          *3.   Mascioli's Attorney Did Not Fail to Adequately Test*
>                *Atkins's Credibility*

In his third claim of ineffective assistance of counsel, Mascioli alleges that his lawyer's performance was deficient because he failed to adequately test Atkins's credibility. Specifically, Mascioli contends that his lawyer conducted an inadequate pre-trial investigation of the case because he failed to

<u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

identify four witnesses[4] who, sometime after the trial, allegedly

made statements that Mascioli now contends could have been

favorable to his case.  In his motion for a new trial under Rule 33

of the Federal Rules of Criminal Procedure, Mascioli argued that

these alleged statements constituted newly-discovered evidence and

required a new trial.  <u>See</u> Case No. 1:05cr67, dkt. nos. 44, 61.

In his memorandum in support of his motion for a new trial,

however, Mascioli admitted that

> To have identified this newly discovered evidence prior
> to trial would have required direct inquiry of the dozens
> or hundreds of people known or suspected by [Mascioli] to
> have knowledge of Atkins and Boswell, in the hope that
> one or both of them might have made a statement
> exculpatory of him.  Such an undertaking would not have
> been reasonable, and the level of diligence required
> would have vastly exceeded mere 'due diligence.'

<u>Id.</u> at p. 3.

The Court agrees that such a pre-trial investigation would

have "vastly" exceeded the due diligence required by reasonably

objective professional standards.  Moreover, having lost his motion

for a new trial, Mascioli cannot now reverse tactics and allege

ineffective assistance of counsel by re-characterizing the proposed

---

[4]     The alleged witnesses are: Robert Bruton, Nicholas Fusco,
Rachael Kalabokes, and Bethany Roberts.

investigation as a routine inquiry that his attorney should have conducted in the regular course of his representation.

Thus, because such an investigation would have been extraordinary and beyond the scope of the due diligence required of counsel, Mascioli's attorney was not deficient for failing to conduct it. Mascioli's third ineffective assistance counsel of claim concerning the adequacy of the pre-trial investigation therefore fails because he cannot satisfy the first prong of Strickland.

### C.  Mascioli is Not Entitled to an Evidentiary Hearing or Discovery

Mascioli's repeated claims that he is entitled to an evidentiary hearing and discovery are unavailing. Courts must conduct an evidentiary hearing only if the parties produce evidence disputing material facts regarding non-frivolous habeas claims. U.S. v. White, 366 F.3d 291, 297 (4th Cir. 2004). Moreover, § 2255 itself does not require an evidentiary hearing when the evidence establishes conclusively that the petitioner is not entitled to relief. See 28 U.S.C. § 2255(b).

For the reasons already discussed, Mascioli's habeas claims are without support and he is entitled to no relief. Consequently,

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

he is not entitled to an evidentiary hearing or discovery, and the Court denies both requests.

### V. Conclusion

The Court **ADOPTS** Magistrate Judge Kaull's July 3, 2008 Amended R&R in its entirety (Civ. Act. No. 1:07cv44, dkt. no. 13; Crim. Act. No. 1:05cr67, dkt. no. 84), **DENIES AS MOOT** the July 3, 2008 R&R (Civ. Act. No. 1:07cv44, dkt. no. 12; Crim. Act. No. 1:05cr67, dkt. no. 83), **DENIES** Mascioli's § 2255 petition (Civ. Act. No. 1:07cv44, dkt. no. 1; Crim. Act. No. 1:05cr67, dkt. no. 70), and **DISMISSES** the case **WITH PREJUDICE** from the Court's docket.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

Dated: May 12, 2009

                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE